[No. B107630. Second Dist., Div. Six. Feb. 3, 1998.]

RODNEY F., Plaintiff and Appellant, v.
KAREN M., Defendant and Respondent.

## COUNSEL

Rodney F., in pro. per., for Plaintiff and Appellant.

Glenn L. Robertson for Defendant and Respondent.

## OPINION

**GILBERT, J.**—Rodney F. had an affair with a married woman. He brought this action to establish paternity of a child to whom the woman gave birth.

The trial court applied the conclusive presumption of Family Code section 7540 and found the woman's husband to be the father of the child.[1]

Rodney F. appeals raising due process and equal protection challenges. He also contends that blood test results should have been admitted into evidence; that the policies of section 7540 are not furthered by its application to the circumstances here; and that the child's mother is estopped from denying his paternity. Because we are constrained by precedent we affirm the judgment.

## FACTS

Karen M. and her husband were married in 1985. They have a home in Carpinteria. The marriage had its problems, and Karen M. filed for a dissolution in May of 1991. The action was dismissed in February of 1992, prior to the judgment becoming final. Karen M. filed a second action for dissolution in March of 1992, but that action did not result in a judgment.

During the marriage Karen M. began a sexual affair with a coworker, Rodney F. In May of 1991, Rodney F. and Karen M. rented an apartment in Summerland in which they carried on their affair. In March of 1992, they rented a house in Goleta. There was a dispute as to how frequently Karen M. stayed with Rodney F. at these locations. But it is undisputed that she spent a considerable amount of time there.

Karen M.'s husband worked in the offshore oil industry and was frequently on an offshore oil platform for seven days at a time. Karen M. ceased having sexual relations with Rodney F. in late July of 1992. They decided to remain friends and had periodic contact thereafter.

Karen M. became pregnant around July 31, 1992. In September, she told her husband she was pregnant. She also told him about her affair with Rodney F. She met Rodney F. for lunch in September. When she told him she was pregnant, she said he really did not care. Karen M. delivered a girl in March of 1993. The baby has resided with Karen M. and her husband since her birth. Rodney F. has had no contact with the baby.

In March of 1993, Rodney F. filed the instant action to establish paternity and to obtain joint legal and physical custody. He claimed he was the girl's biological father. The trial court denied Rodney F.'s ex parte motion for visitation. Karen M. answered, claiming Rodney F. was not the biological father and that her husband was conclusively presumed to be the biological father.

---

[1]All statutory references are to the Family Code unless otherwise stated.

In July of 1993, Rodney F. made a motion for visitation and blood tests. Karen M. opposed the motion on the ground that only a presumed father is entitled to blood tests and Rodney F. is not a presumed father. The trial court denied Rodney F.'s motion for visitation but granted his motion for blood tests of Karen M. and the baby. The court's order was without prejudice to the objections previously raised by the parties. DNA blood tests show Rodney F. with a paternity index of 195 and a probability of 99.5 percent that he is the baby's biological father.

Claiming that the results of the blood tests showed him to be the biological father, Rodney F. made another motion for visitation. After a hearing at which witnesses testified, the trial court denied the motion. The trial court found that at the time the child was conceived, Karen M. was cohabiting with her husband who was neither impotent nor sterile; thus, her husband was conclusively presumed to be the baby's father under section 7540.

In February of 1995, Rodney F. made a motion to compel Karen M.'s husband to have a blood test. Rodney F. claimed the motion was necessary to rebut the conclusive presumption of paternity under section 7540 and to resolve the issue of paternity according to the test results pursuant to section 7541. The motion was denied.

The matter proceeded to trial. Karen M. testified that her primary residence during the period of conception was in Carpinteria, referring to the home she owned with her husband. She testified she brought some of her belongings over to the house in Goleta and borrowed some furniture for the house. She denied, however, she ever moved into the house in Goleta. She said 90 percent of her belongings remained in the Carpinteria house. She never moved out of the Carpinteria house and had no intention of doing so.

Karen M. stated that early in her relationship with Rodney F. she probably thought of marrying him. By 1992, however, she believed it was clear there was no hope for marriage. One reason was that she learned Rodney F. had had four or five previous affairs with married women and none of these affairs resulted in marriage.

Rodney F. admitted that he did not propose marriage to Karen M. until October of 1992. Rodney F. explained his reluctance to propose by stating he believed a proposal would have been inappropriate while Karen M. was still married to her husband.

Karen M. admitted that she told Rodney F. that theirs was an exclusive sexual relationship. Karen M. testified, however, that she lied to Rodney F.

about the relationship's exclusivity. The affair ended for a while in late 1991, because Rodney F. was suspicious Karen M. was intimate with her husband. Rodney F. admitted in a deposition that he did not trust her about her relationship with her husband.

Karen M. testified that throughout her marriage she maintained a sexual relationship with her husband. She said that throughout her marriage, except when she was pregnant, there was never a period of 30 days when she and her husband did not have sexual relations.

Karen M.'s husband testified he was neither impotent nor sterile. He and Karen M. spent nights together in their Carpinteria home during the months of June, July, August and September of 1992. Except when she was pregnant, there was never a month when he did not have sex with his wife. He knew nothing about the affair.

The trial court found that at the time of conception Karen M. was cohabiting with her husband who was neither impotent nor sterile. The court applied the conclusive statutory presumption that the child was a child of the marriage.

DISCUSSION

I.

Section 7540 states, "Except as provided in section 7541, the child of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage."

Section 7541, subdivision (a), allows the "conclusive" presumption of section 7540 to be rebutted. It requires the court to determine paternity in accordance with "the conclusions of all the experts, as disclosed by the evidence based on blood tests . . . ." Subdivisions (b) and (c) of section 7541, however, limit those who may make a motion for blood tests to the husband, the child, the mother and the "presumed father" as defined in sections 7611 and 7612.

Section 7611 provides that a man is a presumed father if he meets the conditions stated in section 7540 or in any of the following subdivisions: "(a) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated . . . . [¶] (b) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law . . . . [¶] (c) After the child's birth he and the child's natural mother have married, or attempted to marry,

each other by a marriage solemnized in apparent compliance with law. . . . [¶] (d) He receives the child into his home and openly holds out the child as his natural child." Subdivision (e) concerns a child who was born or resides in a foreign nation.

Section 7612 makes it clear that the presumptions stated in section 7611 are rebuttable except as provided in section 7540. Rodney F. is not a presumed father as defined in section 7611. Thus, it was error for the trial court to order blood tests.

## II.

Rodney F. claims that the statutory scheme is unconstitutional in that it violates the due process and equal protection rights of biological fathers.

■ A due process challenge to the conclusive presumption that the husband is the father of a child conceived during the marriage has been rejected by both the California and United States Supreme Courts. (*Michael H.* v. *Gerald D.* (1989) 491 U.S. 110 [109 S.Ct. 2333, 105 L.Ed.2d 91]; *Michelle W.* v. *Ronald W.* (1985) 39 Cal.3d 354 [216 Cal.Rptr. 748, 703 P.2d 88].) The presumption reflects the sanctity traditionally accorded to the relationships that develop within the unitary family. (*Michael H.* v. *Gerald D., supra*, 491 U.S. at p. 123 [109 S.Ct. at p. 2342, 491 L.Ed.2d at p. 106].) The biological father's private interest in establishing a parent and child relationship is overridden by the substantial state interests in familial stability and the best interest of the child. (*Michelle W.* v. *Ronald W., supra*, 39 Cal.3d at p. 363.)

■ Nor is there any merit to Ronald F.'s equal protection challenge. The equal protection clause guarantees equality under the same conditions and among persons similarly situated. (8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 599, p. 51.) The Legislature may make reasonable classifications so long as the classification is not arbitrary, but is based on a difference having a substantial relationship to a legitimate object. (*Ibid.*)

There is an obvious distinction between a man who has undertaken the obligations of marriage and family and a man whose only connection with the child is biological. Our Supreme Court has held that the state has a legitimate interest in preferring the former over the latter. (See *Michelle W.* v. *Ronald W., supra* 39 Cal.3d at p. 363.)

There is also an obvious distinction between a biological father who has actually established a parent and child relationship, and a man who has not established such a relationship but would like to do so. Only the former are presumed fathers under section 7611, subdivision (d). A biological father who has not actually formed a parental relationship with the child does not have sufficient interest to overcome that of the state where the conclusive

presumption of paternity applies. (See *Michael M.* v. *Giovanna F.* (1992) 5 Cal.App.4th 1272, 1284 [7 Cal.Rptr.2d 460].)

 Rodney F. argues that Karen M. should not be allowed unilaterally to deprive him of the status of a presumed father. He points out that he has made every effort to take the child into his home and treat her as his own. But, the same policies that support the conclusive presumption of paternity allow Karen M. to act unilaterally. The conclusive presumption of paternity would be of little value if a parent could not act unilaterally to protect parental and familial relationships from interference from the outside by a party claiming to be the biological father.

Rodney F.'s reliance on *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 [4 Cal.Rptr.2d 615, 823 P.2d 1216] is misplaced. That case did not involve the conclusive presumption of paternity. The case involved an adoption. There was no existing family to protect.

### III.

Rodney F. contends that the results of the court-ordered blood tests require that the trial court apply section 7541 to override the conclusive presumption of section 7540. But, the blood tests were not authorized by section 7541, and only blood tests authorized by section 7541 can overcome the conclusive presumption of paternity. Where, as here, the conclusive presumption of paternity applies under the law, it is irrelevant that the biological father can prove his paternity or even that all parties to the proceedings may concede that plaintiff is the biological father.

### IV.

Rodney F. contends section 7540 does not apply here because its policies are not furthered by its application.

Here, the child was conceived and born during Karen M.'s marriage to her husband. They are the only parents the child has ever known. It is precisely that type of relationship that section 7540 is designed to protect from interference. The state has a legitimate interest in doing so. (See *Michelle W.* v. *Ronald W.*, *supra*, 39 Cal.3d at p. 363.)

Ronald F.'s reliance on *Michael M.* v. *Giovanna F.*, *supra*, 5 Cal.App.4th at page 1284, is misplaced. There, the biological father who had attempted to form a relationship with the child was allowed to establish paternity. But the conclusive presumption of paternity did not apply because the child was conceived before her mother and her mother's husband were married. The court expressly distinguished the result from that which would be reached had the conclusive presumption applied.

## V.

Rodney F. claims that Karen M. is estopped from denying his paternity. His claim of estoppel is based on Karen M.'s representation to him that theirs was an exclusive relationship.

Our Supreme Court has held in the context of dependency proceedings that a county and the child's mother may be estopped to deny the biological father's paternity. (*In re Lisa R.* (1975) 13 Cal.3d 636, 644-645 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017].) We question, however, whether estoppel would apply where, as here, the family is still intact. Under such circumstances the estoppel of the mother should not affect the interests of her husband, child and the state in preserving the integrity of the family.

Moreover, estoppel requires reasonable reliance by the party to whom a promise is made. (*Laks* v. *Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 890 [131 Cal.Rptr. 836].) It is questionable whether a person involved in an adulterous relationship could ever reasonably rely on a statement that the relationship was exclusive of a party's spouse.

In any event, we must presume the trial court found no reasonable reliance. ■ In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates* v. *Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872 [274 Cal.Rptr. 168].) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*) Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 370, pp. 420-421.) The trier of fact is not required to believe even uncontradicted testimony. (*Sprague* v. *Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028 [213 Cal.Rptr. 69].)

■ In so viewing the evidence we must presume Rodney F. failed to carry his burden of proving reasonable reliance to the satisfaction of the trier of fact. Moreover, there is affirmative evidence that Rodney F. did not reasonably rely. He admitted in a deposition that he did not trust Karen M. with regard to her relationship with her husband.

## VI.

Rodney F. argues that it would be in the best interest of the child and better public policy for society to acknowledge his paternity. Here the DNA blood tests show Rodney F. with a paternity index of 195. If accurate, there is a probability of 99.5 percent that he is the child's biological father. He is willing to assume responsibility for support of his daughter and asks only for reasonable visitation. If he is shown to be a responsible, loving father, public policy may be better served by allowing him to establish a relationship with

his daughter. Instead, as the dissent points out, the law makes him a stranger to his biological daughter, and prevents him from forming a parental relationship with her.

Moreover, it may serve no good purpose and may not be in the best interest of the child to create what in essence is a fictional family. Here we have a married couple apparently pretending that a child is their offspring. It is admirable that Karen M.'s husband is willing to raise this child as his own. But it may also be beneficial for this child to have a relationship with her biological father with whom she has blood and genetic ties.

That we are even deciding this case calls into question what familial stability we are preserving. Although *Michael M.* v. *Giovanna F., supra,* 5 Cal.App.4th 1272 is distinguishable, it is instructive here. In *Michael M.* both the mother and biological father knew that they had conceived a child before the mother's marriage to another man. For that reason the conclusive presumption of paternity did not apply when the child was born during the marriage. The Court of Appeal allowed the biological father's paternity action to proceed. The court stated there was "no tenable basis on which to find a threat to the unity of the family flowing from the biological father's prompt attempt to establish a relationship with the child." (*Id.,* at p. 1284.)

Similarly here, where all the parties know who is the biological father, there is no reason to assume the integrity of the "family" will be in jeopardy if visitation is allowed.

Nevertheless, we are constrained by precedent. The policy underlying our decision has been determined by the Legislature and upheld by our highest court. A change in this policy is a matter for the Legislature.

The judgment is affirmed. Costs on appeal are awarded to respondent.

Stone (S. J.), P. J., concurred.

**YEGAN, J.,** Concurring and Dissenting.—I concur with the majority in all respects of the opinion with the exception of part VI. I do not join in the majority's opinion suggesting that, if certain conditions are satisfied, appellant should perhaps be allowed reasonable visitation to establish a "relationship" with the minor. Notwithstanding the biological connection, in legal contemplation, appellant is a stranger to the minor. He has no legal right to visitation or a "relationship" with the minor.

On March 5, 1998, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 22, 1998. Mosk, J., and Chin, J., were of the opinion that the petition should be granted.