Filed 12/27/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| V.S.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>M.L.,<br><br>    Respondent. | A138827<br><br>(Marin County<br>Super. Ct. No. FL1205751) |

V.S. (Victor)[1] appeals the dismissal of his petition seeking to establish that he is the father of one-year old Donald.  Based on undisputed facts, it appears that while Victor and M.L. (Mary) were romantically involved, Victor impregnated Mary.  About one month before Donald was born their relationship terminated and Mary married Roger. Mary and Roger brought Donald into their home as their son and have prevented Victor from having contact with the child. In response to Victor's petition to establish a parent-child relationship, Mary moved to dismiss the proceedings on the ground that Victor has no standing to bring the action, and the court granted the motion. We conclude that under the Family Code as it now reads, Victor does have standing to bring the petition and that further proceedings are necessary to determine whether Victor or Roger should be adjudicated to be the child's legal father.

**Background**

Without elaborating on the parties' understandable angst reflected in the record, the facts necessary to resolve the issues on appeal were succinctly summarized in the trial court's tentative decision: "The facts are not in dispute. Although she stops short of

---

[1] To preserve anonymity, fictitious names have been substituted for the first names of all parties.

saying so outright, [Mary] apparently admits that [Victor] is Donald's biological father . . . . [Mary] married Roger . . . before Donald's birth; [Roger] is named as the father on Donald's birth certificate. [Roger] has received Donald into his home and has openly held out Donald as his natural child. [Victor] has never met Donald and has no relationship with him; clearly he would like to do so but [Mary] has thwarted [Victor's] attempts."

Donald was born April 20, 2012. After discovering the birth and making unsuccessful efforts to gain access to the child, on December 27, 2012 Victor filed a petition to establish his parental relationship with Donald, together with a request to compel genetic testing and for other related relief. Mary then filed a motion seeking "an order quashing this proceeding and dismissing this action due to [Victor's] lack of standing (FC 7[6]30, subd. (a); *Dawn D. v. Superior Court* (1998) 17 Cal.4th 932, 937-938.)[*Dawn D.*]." The court's tentative ruling to grant Mary's motion explained, "Roger . . . is Donald's presumed father pursuant to FC § 7611(a) and (d). [Roger] and [Mary] were not married when Donald was conceived, but FC § 7611(a) does not include that requirement; it creates a presumption of paternity if the child is *born* during marriage and does not state that the child must have been *conceived* during marriage. If the Legislature had wished to interpose the latter requirement, it could have done so. Thus, [Victor] does not have standing to pursue a [Uniform Parentage Act] action regarding Donald (FC § 7630). [¶] The cases construing these statutes make clear that if the Petitioner does not qualify as the child's presumed father, his action must fail; *Dawn D.. . .;Lisa I. v. Superior Court (Phillip V.)* (2005) 133 Cal.App.4th 605; *Neil S. v. Mary L.* (2011) 199 Cal.App.4th 240." In its formal order, the court added to its explanation that in *Dawn D.* the Supreme Court "appears effectively to overrule *Michael M. v. Giovanna F.* (1992) 5 Cal.App.4th 1272" and hold "that the biological father of a child *born to a woman married to another man* has no liberty interest in establishing a relationship with the child, protected as a matter of substantive due process, that overcomes its lack of statutory standing to challenge the presumption of a *husband's* paternity under Family Code 7630(a)." The court therefore dismissed the action, and Victor timely noticed this appeal.

2

## Discussion

The trial court correctly stated the import of Family Code[2], section 7611, concerning what is required to be deemed the presumed father of a child, but erred in holding that section 7630, as it now reads, denies another man who alleges that he is the child's father the right to bring an action to determine his paternity.

Section 7611 sets out the rebuttable presumption that a man is the natural father of a child if he meets any of several conditions, including, most commonly, "(a) He and the child's natural mother are or have been married to each other and the child is born during the marriage . . ." or "(d) He receives the child into his home and openly holds out the child as his natural child." There is no question but that Roger qualifies as a presumed father of Donald under both alternatives, as the trial court held.

Section 7630, subdivision (c) now provides that except as to cases coming within section 7540 et. seq. (which no party contends is applicable)[3], "an action to determine the existence of the father and child relationship may be brought by" several categories of persons including "a man alleged or alleging himself to be the father." Until the statute was amended in 2010, subsection (c) provided authorization to file such an action only "with respect to a child who has no presumed father under Section 7611 or whose presumed father is deceased." (See Stats. 2008, ch. 534.) However, in 2010 the statute was amended to remove this qualification. (see, e.g., Stats. 2010, ch. 588.) Under the current version of section 7630, subdivision (c), therefore, Victor, who claims to be the father of Donald, is entitled to bring this action to determine the existence of the father and child relationship even though Roger unquestionably is a presumed father of Donald.[4]

_____

[2] All statutory references are to the Family Code unless otherwise noted.

[3] Section 7540 creates the "conclusive" presumption that "a child of a wife cohabiting with her husband, who is not impotent or sterile" is a child of the marriage. Although labeled conclusive, this presumption may be rebutted under the provisions of section 7541.

[4] In view of this determination, we need not consider Victor's alternative argument that subdivision (b) of section 7630 also gives him standing. Subdivision (b) provides, "Any

*Dawn D.* is not authority to the contrary. There an alleged biological father sought to establish his paternity of a child conceived and born during the mother's marriage to another man. *Dawn D.* arose prior to the 2010 amendment to section 7630, subdivision (c) and the alleged biological father acknowledged that he had no statutory standing to bring such an action. His contention, rejected by the Supreme Court, was that he had "an asserted constitutional liberty interest, protected as a matter of substantive due process, not to be denied the opportunity to establish a parental relationship with the child." (17 Cal.4th at p. 935.) The subsequent amendment to the statute explicitly provides the statutory standing that was lacking in *Dawn D.*[5] The amendment does not determine the issue of fatherhood, but it does confer on Victor standing to assert his claim.

Mary asserts that the legislative history of the 2010 amendment indicates that the change in the statute was designed only to broaden standing to assert paternity in connection with adoption proceedings – "as a catch-all statute that addresses standing to establish paternity for children not being raised by a fit parent." We find the legislative history far less clear on this point than Mary's argument suggests[6], but in all events if the

_____

interested party may bring an action at any time for the purpose of determining the existence or nonexistence of the father and child relationship presumed under subdivision (d) or (f) of Section 7611." While Victor undoubtedly is an "interested party," we note that *Dawn D.* casts doubt on whether subdivision (b) authorizes an action to determine his own paternity under section 7611, subdivision (d), as distinguished from an action to establish the lack of paternity of Roger. (17 Cal.4th at p. 938, fn. 5.)

[5] Neither of the other two cases cited by the trial court in support of its decision are to the contrary. *Lisa I. v. Superior Court* (2005) 133 Cal.App.4th 605 was decided before the 2010 amendment to section 7630, subdivision (c). The petition in *Neil S. v. Mary L.* (2011) 199 Cal.App.4th 240 was also filed before the amendment was adopted, and in holding that the biological father lacked standing the Court of Appeal made no reference to the amended statute. (199 Cal.App.4th at p. 247.)

[6] Although the amendment to section 7630 was part of a larger bill dealing with adoption issues, the legislative counsel's digest states that the bill would provide "that a man may bring an action at any time to establish that he is the father of a child, subject to a specified exception [referring to cases based on the conclusive presumption of paternity]." (Legislative Counsel's Digest to A.B. No 2020, Stats. 2010 ch. 588.) The bill analysis of the Assembly Committee on Judiciary indicates that although the key issue addressed by the bill was whether changes should be made to the adoption process to

4

words of the statute are unambiguous, as they are here, there is no occasion to resort to the legislative history. (E.g., *People v. Anderson* (2010) 50 Cal.4th 19, 29; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61.) There is no ambiguity in the amended statutory provision, giving one who alleges himself to be the child's father the right to bring an action to determine the existence of the father and child relationship, regardless of whether another man is also a presumed father of the same child. While there may be some redundancy in subsections (a), (b), and (c) of section 7630, there is no conflict between those provisions, at least with respect to any issue in the present case.[7]

eliminate conflicts between statutes and between case law and statute, the bill "[p]rovides that the same process be used to determine the existence of a parent-child relationship, regardless of whether the child has a presumed parent or not, including the same time period for bringing the action. This process does not apply if the conclusive presumption of paternity for a child of a marriage exists." (Bill Analysis, Assembly Committee on Judiciary, AB 2020 pp. 1-2 (Mar. 23, 2010).) In a comment, the analysis explains, "The bill seeks to treat alleged and presumed parents the same for purposes of determining the existence of a parent-child relationship. . . . [¶] Existing law provides slightly different statutory schemes for alleged and presumed fathers to seek legal recognition of their relationship with the child or to terminate their parental rights. However, the California Supreme Court has held that alleged fathers have a constitutional right to gain custody of their children, even if they do not satisfy one of the conditions necessary to be recognized as a presumed father. In that case the court held that the statutory scheme that required, for purposes of adoption, consent of mothers and presumed fathers, but allowed for termination of parental rights of alleged fathers on the basis of the child's best interests, violated the alleged father's constitutional rights. (Adoption of Kelsey S. (1992) 1 Cal.4th 816.)[¶] This bill eliminates that distinction and, for procedural purposes, treats alleged parents like presumed parents. This change makes California's statutory structure consistent with case law's expanded rights of alleged parents and creates a consistent procedural framework for establishing and terminating the rights of presumed and alleged fathers." (*Id.* at pp. 3-4.)

[7] Subdivision (a) restricts the categories of persons who may bring actions for the purpose of declaring or disputing the existence of the father and child relationship under subdivisions (a), (b), or (c) of section 7611; a man alleging himself to be the father has no right to proceed under that subdivision and Victor does not attempt to do so. Section 7630, subdivision (b) confers standing on "any interested party" to bring an action to determine the existence or nonexistence of the father and child relationship presumed under subdivision (d) or (f) of section 7611. Section 7630, subdivision (c) permits a classification of persons broader than the classifications in subdivision (a), including a man alleging himself to be the father of the child, to bring an action to determine the

This conclusion is supported by the recent decision in *J.R. v. D.P.* (2012) 212 Cal.App.4th 374, 384- 387. There the court recognized that the 2010 amendment was not in effect at the time relevant to the decision in *Dawn D.*, and that the subsequent amendment provides standing to one alleging himself to be a child's father even if another man is the presumed father of the child. (212 Cal.App.4th at pp. 384--386.) It is true, as Mary argues, that the man with whom the mother was living in that case, and who was the presumed father by virtue of section 7011, subdivision (d), was not married to the mother at the time of the child's conception or birth. But that difference does not affect the reasoning of that court, or our own reasoning, as to the application of the amended section 7630, subdivision (c).

The fact that the mother and presumed father were not married when the child in *J.R. v. D.P.* was born may be argued to render inapplicable a second ground on which the court found standing in that case, but even as to that ground the factual difference is not significant. The court in *J.R. v. D.P.* held that "even without the statutory amendment" (i*d.* at p. 384) the alleged biological father had standing "by virtue of the principles stated in [*Adoption* of] *Kelsey S.*[(1992) 1 Cal.4th 816] and applied in *Gabriel P.* [*v. Suedi* (2006) 141 Cal.App.4th 856]." (*Id.* at p. 387.) Those cases hold that an alleged biological father has a constitutionally protected interest conferring standing to establish his paternity where, at the time of the child's conception, the mother of the child was not married to the man who subsequently became a presumed father of the child. Because no marriage family existed, these cases hold, the biological father's constitutionally protected interest in establishing paternity is not outweighed by the state's interest in maintaining family integrity. (*J.R. v. D.P., supra,* 212 Cal.App.4th at pp. 385-387; *Gabriel P. v. Suedi, supra,* 141 Cal.App.4th at p. 860.) These cases distinguish *Dawn P.* on the ground that there the mother was married to the presumed father when she was impregnated by another man and when the child was born. The Supreme Court held in *Dawn P.* that there is no constitutional protection for an alleged biological father's

existence of the father and child relationship and does not limit the grounds on which such relief may be sought.

"interest in establishing a relationship with his child born to a woman married to another man at the time of the child's conception and birth." (17 Cal.4th at p. 941.) As Justice Kennard wrote in concurrence, "One who . . . fathers a child with a woman married to another man takes the risk that the child will be raised within that marriage and that he will be excluded from participation in the child's life." (17 Cal.4th at p. 947.) Although in these cases the mother was married to the presumed father when the child was both conceived and born, their reasoning indicates that what determines whether the biological father acquires a constitutionally protected interest is whether the mother is wed to the other man at the time of conception, not whether they were married at the time of birth.

In *Michael M. v. Giovanna F.* (1992) 5 Cal.App.4th 1272 the court explicitly held that the alleged biological father acquires a constitutionally protected right to assert his claim to fatherhood where, as in the present case, the mother was not married to the other man at the time of conception but marries him before birth of the child. "Where the marriage partners are joined, both knowing that the child is in utero and there is a different biological father in existence, we find no tenable basis on which to find a threat to the unity of the family flowing from the biological father's prompt attempt to establish a relationship with the child." (5 Cal.App.4th at p. 1284.) Citing *Kelsey S.*, the court held that "where unwed parents conceive, and the mother marries another before the birth of the child, the biological father's substantive due process right to a relationship with his child requires that he be allowed standing under the [Uniform Parentage Act] to attempt to establish his paternity of the child, so long as he has promptly taken sufficient steps to preserve his interest." (*Id.* at p. 1285.)[8]

---

[8] In *Lisa I. v. Superior Court, supra,* 133 Cal.App.4th at p. 621, in holding that a biological father who impregnated a married woman separated from her husband, who divorced her husband before birth of the child, had no interest in establishing his paternity protected by the due process clause, the court distinguished *Michael M. v. Giovanna F.* on the basis that the mother and subsequent husband (in *Lisa I.*) *were* married when the child was *conceived.* The court also cited to *Fuss v. Superior Court* (1991) 228 Cal.App.3d 556, as holding that a "biological father's rights [were] not cut off by mother who conceived child while unmarried and then married another man before birth." (133 Cal.App.4th at p. 621.)

The fact that Victor has standing to assert his claim to fatherhood does not mean that his claim necessarily has merit. Assuming that he can establish his biological paternity, he must also carry the burden of proving that he is entitled to the rights of a presumed father of Donald. Although he undoubtedly cannot establish that he has "receive[d] the child into his home" as required by section 7011, subdivision (d), he may be able to prove that he is a so-called *Kinsey S.* father, that is, that despite his best efforts he was prevented by Mary from doing so and that he has nonetheless "openly [held] out the child as his natural child" and attempted to assume the obligations of parenthood. If Victor can prove that he "acted as promptly as was reasonably possible to establish that he is [Donald's] father, and that [Mary's] conduct had unilaterally precluded [him] from meeting the statutory requirements for the status of presumed father," he will be entitled to the rights of a presumed father. (*Gabriel P. v. Suedi D., supra,* 141 Cal.App.4th at pp. 860-861.)

*Kelsey S.* held that California's statutory scheme "violates the federal constitutional guarantees of equal protection and due process for unwed fathers *to the extent that* the statutes allow a mother unilaterally to preclude her child's biological father from becoming a presumed father . . . If an unwed father promptly comes forward and demonstrates a full commitment to his parental responsibilities  -- emotional, financial, and otherwise – his federal constitutional right to due process prohibits the termination of his parental relationship absent a showing of his unfitness as a parent." (1 Cal.4th at p. 849.)[9]  To determine whether the biological father is entitled to the rights of

---

In *Neil S. v. Mary L., supra,* also cited by the trial court, the Court of Appeal found *Dawn D.* controlling in determining that a biological father had no fundamental liberty interest in an opportunity to raise his alleged children because, like the situation in *Dawn D.,* the biological father "claimed to have conceived the twins with [mother] while she was married to her husband, though living apart from him . . . ." (199 Cal.App.4th at p. 253.)

[9] In the seminal *Kelsey S.* case itself, the question was whether the child's mother could give the child up for adoption without the consent of a biological father who timely attempted to assert his right to custody of the child.  Subsequent cases have made clear

a presumed father in such a case, "[t]he father's conduct both *before and after* the child's birth must be considered. Once the father knows or reasonably should know of the pregnancy, he must promptly attempt to assume his parental responsibilities as fully as the mother will allow and his circumstances permit. In particular, the father must demonstrate 'a willingness himself to assume full custody of the child – not merely to block adoption by others.' (Citation.) A court should also consider the father's public acknowledgement of paternity, payment of pregnancy and birth expenses commensurate with his ability to do so, and prompt legal action to seek custody of the child." (*Ibid.*) "To satisfy the *Kelsey S.* criteria, a child's biological father must show he promptly stepped forward to assume full parental responsibilities for his child's well-being, the child's mother or some third party thwarted his efforts to assume his parental responsibilities, and that he demonstrated a willingness to assume full custody of the child." (*In re M.C.* (2011) 195 Cal.App.4th 197, 220.)

Assuming that, despite the eight month interval between Donald's birth and the filing of his petition, Victor can establish his status as "a quasi-presumed, or '*Kelsey S.*' father as they are most commonly known" (*In re M.C., supra,* 195 Cal.App.4th at p. 213), both Roger and Victor will have qualified to be treated as Donald's presumed father. "Although more than one individual may fulfill the statutory criteria that give rise to a presumption of paternity, 'there can be only one presumed father.' (Citation.)" (*In re Jesusa V.* (2004) 32 Cal.4th 588, 603.) If more than one man meet the criteria giving rise to the rebuttable presumption of fatherhood, the court must determine which of the two men's presumption "on the facts is founded on the weightier considerations of policy and

that the biological father's constitutional rights recognized in *Kelsey S.* apply in other contexts, including situations such as involved in the present case where the mother attempts to provide a home for the child with another man whom she has subsequently married. (E.g., *Gabriel P. v. Suedi D., supra,* 141 Cal.App.4th at pp. 859-860; *Michael M. v. Giovanna F., supra,* 5 Cal.App.4th 1272; cf. *In re M.C.* (2011) 195 Cal.App.4th 197, 219 .)

9

logic." (§ 7612, subd. (b));[10] *In re Jesusa V., supra; J.R. v. D.P., supra,* 212 Cal.App.4th at pp. 383, 390; *Gabriel P. v. Suedi D., supra,* 141 Cal.App.4th at p. 864.) "[B]iological paternity by a competing presumed father does not necessarily defeat a nonbiological father's presumption of paternity." (*In re Jesusa V. , supra,* 32 Cal.4th at p. 604.) Rather, the court is "obliged to weigh all relevant factors – including biology – in determining which presumption [is] founded on weightier considerations of policy and logic." (*Id.* at p. 608.) Where conflicting presumptions arise, "a court must make factual findings with respect to each presumption and only then weigh which presumption is entitled, in that case, to greater weight. The nature of each presumed father's role in the life of a child and the marital circumstances will vary from case to case and thus the trial court must make its determination under section 7612 on a case-by-case basis. In resolving such a conflict, the trial court must at all times be guided by the principle that the goal of our paternity statutes is 'the protection of the child's well-being.'" (*Craig L. v. Sandy S.* (2004) 125 Cal.App.4th 36, 52.) "[T]he trial court must in the end make a determination which gives the greatest weight to [the child's] well-being." (*Id.* at p. 53; *J.R. v. D.P., supra,* 212 Cal.App.4th at p. 390; see *In re Jesusa V. , supra,* 32 Cal.4th at p. 619.)

---

[10] Section 7612, subdivision (a) provides that with inapplicable exceptions, "a presumption under Section 7611 is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence." Subdivision (b) provides: "If two or more presumptions arise under Section 7610 or 7611 that conflict with each other, . . . the presumption which on the facts is founded on the weightier considerations of policy and logic controls."

**Disposition**

The order dismissing the petition is reversed.  On remand, the trial court must determine whether V.S. (referred to in this opinion as "Victor") has satisfied the requirements necessary to be considered a quasi-presumed, or *Kelsey S.,* father and, if so, whether the presumption of paternity as to him or as to mother's husband (referred to in this opinion as "Roger") is supported by weightier considerations of policy and logic.

_____
Pollak, J.

We concur:

_____
McGuiness, P. J.

_____
Siggins, J.

11

Trial Court:                          Superior Court, Marin County


Trial Judge:                          Hon. Verna A. Adams, Judge


Counsel for Appellant V.S.:           Gregory R. Ellis
                                      Stephen B. Ruben, Diana L. Leonida


Counsel for Respondent M.L.:          Deborah H. Wald