Filed 4/24/13  In re S.O. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re S.O., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B242948 (Super. Ct. No. J068357) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. AMANDA O., Defendant and Appellant. | |

Amanda O. (mother) suffers from a severe mental disorder.  Due to manifestations of that illness, her daughter S.O. was removed from her custody shortly after the child's birth.  Two months after reunification services were ordered, mother began a new drug treatment and responded positively.  At the six-month review hearing, however, mother did not oppose the termination of services and instead sought to have the child placed with the maternal grandmother.  After the juvenile court denied the request and scheduled a permanency planning hearing (Welf. & Inst. Code, § 366.26),[1] mother filed a modification petition seeking reinstatement of reunification services

---

[1] All further statutory references are to the Welfare and Institutions Code.

(§ 388) on the ground that her mental condition had improved to the point she could now comply with her case plan. The court denied the petition and proceeded to terminate mother's parental rights and select adoption as S.O.'s permanent plan. Mother now appeals.

Although we are not unsympathetic to mother's position, it cannot be said the court abused its discretion in concluding that the indisputably dramatic change in mother's mental condition was simply not enough to establish that further reunification services would be in S.O.'s best interests. Because the child's best interests became paramount once services were terminated and mother did not oppose the termination of those services, there is no basis for us to disturb the court's decision. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mother was diagnosed with schizophrenia at the age of 17, and was subsequently diagnosed with schizoaffective and bipolar disorders. Shortly after S.O.'s birth in June 2011, mother began behaving erratically and barricaded herself in her hospital room with S.O. Although hospital staff were able to remove S.O. for tests the following morning, mother's condition worsened after the child was returned to her. After a 30-minute standoff with the police, mother was restrained while S.O. was taken into custody.

On June 23, 2011, Ventura County Human Services Agency (HSA) filed a section 300 petition alleging that mother's mental illness impaired her ability to care for S.O. and created a significant risk of future abuse or neglect.[2] The following day, the court ordered S.O. detained and set a jurisdiction and disposition hearing for July 19, 2011. Mother was prohibited from having further contact with S.O. until her condition had stabilized and she was able to comply with her treatment.

_____

[2] The petition alleged that the identity of S.O.'s father was unknown. Although mother subsequently identified him, he did not appear in the proceedings and is not a party to this appeal.

On July 3, 2011, mother was voluntarily admitted for psychiatric treatment. She was then placed on a 72-hour hold and certified for an additional 14 days of treatment (§§ 5150, 5250). On July 11, 2011, she was discharged and referred to her regular psychiatrist, Dr. Jantje Groot, for further treatment.

Mother was interviewed by an HSA social worker three days after her discharge. Mother had difficulty understanding the questions and frequently did not respond. Her parents reported she was psychiatrically hospitalized on two prior occasions and was stable from 2009 until three to four months prior to S.O.'s birth. Dr. Groot indicated that mother was not taking all of her medications and was minimizing her psychotic symptoms, which included hearing voices.

Mother had her first supervised visit with S.O. on July 18, 2011. Mother's parents and a public health nurse were also present. During the visit, the social worker observed that mother required "lots of coaching" from the nurse and did not appear to know how to hold, feed, or bond with the child.

A contested jurisdiction and disposition hearing was set for September 8, 2011. When the matter was called, mother announced she had abandoned her contest and waived her right to a trial. The court sustained the section 300 petition, ordered that mother be provided reunification services, and set a six-month review hearing for January 3, 2012. The court adopted HSA's recommended case plan, which included a psychological evaluation, counseling, psychotropic medication, parenting education, and supervised visitation. Mother and her parents were given a list of service providers and each aspect of the case plan was discussed.

On October 4, 2011, mother missed her scheduled psychological evaluation. Mother's new social worker subsequently discussed the case plan with her and arranged to have the maternal grandmother take her to her rescheduled evaluation, which was conducted by Dr. Christina Griffin on October 17, 2011. In her report, Dr. Griffin opined that mother could not presently care for her own needs and did not have the capacity to adequately parent S.O.

3

After mother underwent the psychological evaluation, she missed several appointments with her social worker. During an unannounced visit in December 2011, mother appeared confused and said she had not been performing her case plan because her mother lost it and she could not remember what it said. Dr. Groot told the social worker that mother had been attending her monthly appointments, although she was sometimes off by two or three days. The doctor also reported that mother had been doing better since beginning her new medication regimen a month earlier. That medication was administered by an injection given every four weeks.

At the six-month review hearing, HSA recommended that reunification services be terminated and the matter be set for a permanency planning hearing. The social worker reported that mother consistently needed help caring for S.O. during their visits and had failed to sufficiently participate in her case plan.

Mother contested HSA's recommendation and a hearing was set for February 1, 2012. When the matter was called, however, mother abandoned her opposition to the termination of services and urged the court to grant the maternal grandmother's request for relative placement of S.O. pursuant to section 361.3. The court denied the request and proceeded to terminate reunification services and set the matter for a section 366.26 hearing. In its notice of hearing, HSA stated it was recommending termination of mother's parental rights and implementation of a plan of adoption. A contested hearing was subsequently set for June 14, 2012.

Prior to the section 366.26 hearing, mother filed a section 388 petition seeking reinstatement of reunification services. At the combined hearing, Dr. Groot testified that mother "has had tremendous improvement in her symptoms" over the prior six months. Over the course of that period, her hallucinations had steadily disappeared and she "basically [got] her personality back." The positive changes began after mother's medication was altered following her hospitalization in July 2011. The doctor began by giving mother injections of Risperdal Consta every two weeks. In November 2011, the doctor began giving mother injections of Invega Sustenna every four weeks combined with doses of antidepressant and insomnia medications. When the doctor last saw mother

4

in April 2012, her mental condition had stabilized and she could "be essentially self-sustaining and run her life like any other person." The doctor acknowledged, however, that "it remains to be seen whether" she could actually do so. There also remained a "substantial risk" that mother would not continue to comply with her medication requirements. She would presumably have to continue having the injections or a similar medication for the rest of her life. If she stopped, there was a 90 percent chance she would suffer mental decompensation within six months.

Mother's social worker testified that she had seen many positive changes in mother since reunification services had been terminated. Although mother's ability to care for S.O. during visits had improved, one or both of her parents were always there to assist her and she still "usually needs to be prompted to feed the child or change the child or . . . play with [her]." The social worker also believed that mother "still requires a lot of help from her own parents to care for her own needs" and noted that she "hasn't shown any independence or any initiative to ask for more visits[.]" Although S.O. now recognized mother, the two did not have a bond. The child "doesn't seem to gravitate toward" mother during their visits and "[a]s soon as she gets home from the visits, she reaches for her foster mother."

Mother testified on her own behalf. Ever since she started having her monthly injections, her mood had changed and she was more aware. She never considered discontinuing her medication, but there are negative side effects. She graduated from a parenting class and believed that S.O. "[knew] more or less who I am." She was also seeing a therapist once a week.

At the conclusion of testimony, counsel for S.O. joined HSA's counsel in asking the court to deny mother's section 388 petition, terminate her parental rights, and select adoption as the child's permanent plan. The court thereafter entered an order to that effect.

## DISCUSSION

Mother contends the court abused its discretion in denying her section 388 modification petition because she demonstrated that circumstances had changed and that

5

further reunification services would be in S.O.'s best interests.  We conclude otherwise.

Section 388 authorizes a juvenile court to modify a prior order if a parent shows a change of circumstances and establishes that modification is in the best interests of the child.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)  The court has broad discretion in resolving a petition to modify a prior order, and its determination will not be disturbed on appeal unless an abuse of discretion is clearly shown.  (*Id.* at p. 318.)

"'[U]p until the time the section 366.26 hearing is set, the parent's interest in reunification is given precedence over a child's need for stability and permanency.' [Citation.]  'Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability.'  [Citation.]  'The burden thereafter is on the parent to prove changed circumstances pursuant to section 388 to revive the reunification issue. . . .'"  (*In re Zacharia D.* (1993) 6 Cal.4th 435, 447; *In re Vincent M.* (2008) 161 Cal.App.4th 943, 955.)  Where, as here, the court's ruling is against the party who has the burden of proof, it is practically impossible for the party to prevail on appeal by arguing the evidence compels a ruling in her favor.  Unless the trial court makes specific findings of fact in favor of the moving party, we must presume the court found that her evidence lacks sufficient weight and credibility to carry the burden of proof.  (*Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 241.)  "[W]hen a court has made a custody determination in a dependency proceeding, '"a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]."'  [Citations.] . . .' . . . When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."' [Citations.]"  (*In re Stephanie M., supra*, 7 Cal.4th at pp. 318-319.)

The court did not abuse its discretion in finding that mother had failed to meet her burden of establishing not only that circumstances had changed, but also that ordering further reunification services would be in S.O.'s best interests.  In making the latter determination, courts generally consider the seriousness of the problem leading to

6

the dependency, the strength of the relative bonds between the child and her parents and caretakers, and the degree to which the problem can be easily removed as well as the current success of the parent in correcting the problem. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532.) Mother suffers from a serious mental illness that, when left untreated, causes hallucinations and other psychotic symptoms. A manifestation of those symptoms shortly after S.O.'s birth presented a direct and immediate danger to the child's safety. Although mother had made tremendous progress in addressing the problem at the time of the hearing, that progress was relatively recent and a significant possibility of relapse still remained. She also still had to be prompted to feed, change, or play with S.O. during her visits with the child, and had not demonstrated any initiate to visit with the child more often.

Moreover, no substantial bond exists between mother and S.O. such that it could be said further reunification services would be in the child's best interests. In arguing to the contrary, mother offers that she had shown devotion to S.O. in a number of ways and "definitively took advantage of her visitation time to bond." The issue is not, however, whether mother has expressed her affection for S.O. While we do not question mother's commitment to bonding with S.O., it unfortunately appears that her efforts had yet to be successful when her section 388 petition was heard. Although S.O. enjoyed their visits, she is very secure in her long-term prospective adoptive placement and reaches out for her prospective adoptive mother whenever she returns from her visits with mother. In light of this undisputed evidence, it cannot be said that offering mother additional reunification services would be in S.O.'s best interests.

In support of her claim, mother asserts that "this case cries out for the same rational[e] as applied in" *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774 (*Elizabeth R.*). *Elizabeth R.* is inapposite. The error in that case was the trial court's decision to terminate reunification services in the first instance. The issue, as framed by the Court of Appeal, was "whether the juvenile court was compelled by law to terminate reunification services and order a Welfare and Institutions Code section 366.26 hearing when a parent,

although hospitalized for treatment of her mental illness for most of the reunification period, had substantially complied with the reunification plan." (*Elizabeth R.,* at p. 1787.) In answering this question in the negative, the court essentially relied on the principle that any reunification services offered to a parent suffering from mental illness must be reasonable services. (*Ibid.*)

Here, mother did not challenge the termination of services, either in the trial court or by petitioning for extraordinary writ relief. She thus cannot be heard to complain that reasonable services were not provided. (*In re Henry S.* (2006) 140 Cal.App.4th 248, 255-256.) Once reunification services were terminated, the burden shifted from mother's interest in reunification to S.O.'s interest in permanency and stability. (*In re Stephanie M., supra*, 7 Cal.4th at p. 317.) As the court in *Elizabeth R.* effectively recognized, the mother in that case would have been unable to demonstrate that further attempts at reunification were warranted once this burden had shifted. (*Elizabeth R., supra*, 35 Cal.App.4th at pp. 1797-1798.) Mother is in no better position.

We appreciate that mother's mental illness may have rendered it difficult for her to understand the need to comply with the objectives of her case plan. We also acknowledge that proper reunification plans for parents suffering from mental illness should be designed to accommodate such concerns. (*Elizabeth R., supra*, 35 Cal.App.4th at p. 1790.) Any deficiency in mother's plan was, however, a matter to be addressed at the dispositional hearing. Here, mother never claimed that reasonable services were not offered, nor did she seek appellate review of the order terminating services. For purposes of this appeal, the only issue is whether the court abused its discretion in finding that mother had failed to prove circumstances had changed such that it would be in S.O.'s best interests to offer additional services. As we have explained, no abuse of discretion

8

has been shown.

The order denying mother's modification petition and terminating parental rights is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

9

Ellen Gay Conroy, Judge

Superior Court County of Ventura

_____


Kate M. Chandler, under appointment by the Court of Appeal, for Defendant and Appellant.

Leroy Smith, County Counsel, Oliver G. Hess, Assistant County Counsel, for Plaintiff and Respondent.