Filed 4/17/14  In re Elizabeth B. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| In re ELIZABETH B., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B249093 (Super. Ct. No. J1396100) (Santa Barbara County) |
| SANTA BARBARA COUNTY DEPARTMENT OF CHILD WELFARE SERVICES,    Plaintiff and Respondent, v. R. B.,    Defendant and Appellant. |  |

R. B. (Mother) appeals an order terminating her parental rights pursuant to Welfare and Institutions Code section 366.26.  She contends the trial court erred in denying her a contested hearing.[1]  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code.

FACTS

On October 3, 2012, Mother was arrested for being under the influence of methamphetamine. At the time of her arrest, she was caring for her two-year-old daughter, Elizabeth.

Before being taken into custody, Mother was permitted to gather some personal belongings for Elizabeth. While doing so, Mother began to cry. A social worker saw Elizabeth hand Mother a cigarette in an apparent attempt to soothe her. The social worker also saw Elizabeth play with a bong that was kept in the home.

Mother was taken to jail. Elizabeth was detained in shelter care.

The Santa Barbara County Department of Child Welfare Services (CWS) submitted a report for the jurisdiction and disposition hearing. The report stated that Mother had been the subject of CWS referrals since 2000. In 2004, two of Mother's older children were detained. Mother failed to comply with her reunification services plan, her parental rights were terminated and the children were adopted. In 2005, another of Mother's children was detained. Mother again failed to comply with her services plan, her parental rights were terminated and this child was also adopted.

Mother has a history of arrests dating back to 1998, including multiple arrests for drug use and possession. Mother's drug abuse history is extensive. She admitted to being an addict. She had participated in about nine substance abuse treatment programs.

CWS referred Mother to a drug treatment program that required drug testing. Mother failed to submit to drug testing on October 11, 2012. She said she would enter treatment on October 15, 2012, but failed to enter such treatment.

A CWS report prepared for the March 12, 2013 section 366.26 hearing (.26 hearing) recommended that Mother's parental rights to Elizabeth be terminated and that adoption be declared her permanent plan.

2

Elizabeth is a healthy three-year-old, who does not require developmental services. She is currently living with foster parents who are committed to adopting her. The foster parents support Elizabeth's sibling's, R.B.'s, wish to maintain contact with her. Even if her current foster parents decide not to adopt her, it is highly likely another adoptive home will be found.

Mother requested a contested .26 hearing. She filed the following offer of proof: "The minor, Elizabeth, was 2 years, 8 months old when she was removed from the home of [mother]. After a period of several years clean and sober, [mother] started to use methamphetamine in July or August 2012. The minor's sibling, [R.B.], also lived with [mother] at the time, and had been living there for several months at the time of Elizabeth's removal. [¶] The mother last used methamphetamine in October 2012, but she used pain medication (prescribed for her) in November 2012, resulting in a last use date five months ago. [¶] The mother was not ordered any reunification services as to the child, Elizabeth. However, this has not prevented the mother from achieving five months sobriety, connecting with a strong support group of individuals involved in 12-step, and maintaining regular visitation with her daughter. [¶] Since December 17, 2012, the mother was ordered to receive 2x monthly visits with Elizabeth. Inexplicably, these visits did not commence until late January 2013. [¶] As to the beneficial relationship exception, the contested issue will be the nature of the relationship between [mother] and her daughter, and whether the strength of that relationship outweighs the prospective benefits of adoption. The mother will offer her testimony as to the relationship both before and after removal of the child from the mother's home. Prior to removal, the mother was the care provider for Elizabeth, which amounts to the vast majority of the child's life. Per the mother's anticipated testimony, the child 'lights up' when she sees her mother. She also refers to her as 'mommy.' There is a lot of affection exchanged between them during visits, and the

3

child enjoys her activities with her mother. [¶] The case aide will also be called as a witness to establish the affectionate nature of the visitation, and the activities and interaction between mother and daughter. The mother and her child have pet names for each other; 'big bamboo' and 'bamboo,' respectively. There are hugs and kisses exchanged at the visits, and the mother showers Elizabeth with a lot of attention and activities. [¶] The sibling, [R.B.], is also participating in the .26 hearing for his sister, and the mother fully supports his participation. The mother wishes to call [R.B.] as a witness to testify to his own relationship with Elizabeth, including the time that he lived together with her and the mother. [R.B.] became a very protective and involved part of his sister's life. [¶] [R.B.] has finally, after his many requests, been provided with minimal visitation with his sister, and these visits have gone exceptionally well. Case aide testimony will be available to verify this fact. [¶] Additionally there is evidence through the testimony of social worker Heather Race, assuming she testifies in agreement with her notes from her own delivered service log entry, that the substitute care providers for Elizabeth were originally unwilling to commit to facilitating sibling contact, citing previous experience. This in no way is a concession that the court should rely on any evidence presented regarding the purported 'current' intentions of these individuals with respect to this issue."

The trial court found the offer of proof was not sufficient to require a contested hearing. The court stated that, assuming all the facts stated in the offer are true, weighing the benefit of a relationship with Mother against the stability offered by adoption, it would choose adoption.

## DISCUSSION

Mother contends the trial court violated her due process rights when it determined her offer of proof was insufficient to require a contested .26 hearing.

4

Where a parent claims an exception to the termination of parental rights, the trial court has the discretion to require an offer of proof prior to holding a contested .26 hearing. (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1122.) The purpose of the offer of proof is to ensure that the parent has evidence of significant probative value before limited judicial resources are committed to a hearing. (*Ibid.*) The offer of proof must be specific, setting forth the actual evidence to be produced, not merely facts and issues to be argued. (*Id.*, at p. 1124.)

Section 366.26, subdivision (c)(1)(B) requires the juvenile court to terminate parental rights if it finds by clear and convincing evidence that a child is likely to be adopted, unless "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" due to an enumerated statutory exception. The "beneficial parental relationship" exception of section 366.26, subdivision (c)(1)(B)(i) requires a showing of "'regular visitation and contact with the child and the child would benefit from continuing the relationship.'" (*In re Dakota H.* (2005)132 Cal.App.4th 212, 229.) "To meet the burden of proof, the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits. . . ." (*Ibid.*) The parent must establish the existence of a relationship that promotes the child's well-being to such a degree as to outweigh the well-being the child would gain in a permanent home with adoptive parents. (*In re Jason J.* (2009) 175 Cal.App.4th 922, 936.) Only in the "extraordinary case" can a parent establish the exception because the permanent plan hearing occurs after the court has repeatedly found the parent unable to meet the child's needs. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.)

The exception requires proof of "a *parental* relationship," not merely a relationship that is "beneficial to some degree but does not meet the child's need for a parent." (*In re Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1350.) The existence of a beneficial relationship is determined by the age of the child, the portion of the

child's life spent in parental custody, the quality of interaction between parent and child, and the child's particular needs, among other factors. (*In re C.B.* (2010) 190 Cal.App.4th 102, 124; *In re Amber M.* (2002) 103 Cal.App.4th 681, 689 [beneficial relationship may exist when children were in mother's care the majority of their lives].)

Historically, courts have applied the substantial evidence standard of review. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575-576.) The case of *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315, applied the substantial evidence standard to the trial court' determination whether a beneficial relationship exists, and the abuse of discretion standard to the court' determination whether the relationship is so important that it compels a plan other than adoption. Here we affirm under either standard.

"In viewing the evidence, we look only to the evidence supporting the prevailing party. [Citation.] We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. [Citation.] Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. [Citation.] The trier of fact is not required to believe even uncontradicted testimony. [Citation.]" (*Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 241.)

Mother's offer of proof falls far short of demonstrating that this is the extraordinary case. It shows little more than that her visits with Elizabeth are pleasant, Elizabeth "lights up" when she sees Mother, she calls her "mommy," and there is a lot of affection exchanged between them.

That a three-year-old calls Mother "mommy" does not establish the existence of a parental relationship. The interactions between Mother and Elizabeth described in the offer of proof could just as well describe the interactions between

6

Elizabeth and a family friend. There is nothing about those interactions that establish a parent-child bond so strong Elizabeth would suffer substantial harm if it is broken.

Mother points out that she has been the care provider for Elizabeth for the vast majority of her life. But Elizabeth was only two years old when CWS took her from Mother. Mother has spent at least a portion of those two years under the influence of methamphetamine.

Moreover, even if Mother's offer of proof had established some type of parental bond, she offers no evidence whatsoever to show the benefits of that bond outweigh the benefits of a stable home through adoption. Mother claims, albeit belatedly, that she has made some progress in obtaining treatment for her drug abuse. But unfortunately, Mother's history casts great doubt on whether the treatment will lead to permanent sobriety. She has admitted to having been in approximately nine previous treatment programs. Not even the loss of parental rights to three other children due to drugs could keep her from relapsing. She must have known that using drugs would result in her losing Elizabeth. Yet, Mother relapsed into drug use and continued to use even after CWS intervened. Mother's chance of providing an appropriate and stable home for Elizabeth is marginal at best.

We do not say this to disparage Mother's efforts at becoming and remaining free of drug addiction. We simply point out that the evidence clearly shows, adoption is in Elizabeth's best interest. Nothing in Mother's offer of proof contradicts that conclusion.

Mother's reliance on *Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, is misplaced. There the juvenile court found Mother's offer of proof unconvincing and denied her a contested .26 hearing. The Court of Appeal noted: "Perhaps the [juvenile] court had good reason not to be sanguine about

7

petitioner's chances of persuading the court that returning the minors to her custody would present no substantial risk to their well-being." (*Id.*, at p. 759.) Nevertheless, the Court of Appeal concluded the juvenile court abused its discretion in denying Mother a hearing.

There is no doubt that in a close case a contested hearing is preferred even if the juvenile court believes a parent's case will ultimately be unpersuasive. But this is not a close case. Nothing in Mother's offer of proof or any other evidence would lead the juvenile court to conclude adoption is not the appropriate disposition.

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

8

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____


Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Dennis A. Marshall, County Counsel, Bo Bae, Deputy, for Plaintiff and Respondent.