Filed 9/24/21  In re B.G. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re B.G., a Person Coming Under the Juvenile Court Law. | B308221 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>Joseph C.,<br><br>Defendant and Appellant;<br><br>S.P.,<br><br>Intervener and Respondent. | Los Angeles County<br>Super. Ct. No.<br>20CCJP04234F |

APPEAL from an order of the Superior Court of Los Angeles County, D. Brett Bianco, Judge.  Affirmed.

Marsha F. Levine, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Jesse McGowan, under appointment by the Court of Appeal, for Intervener and Respondent.

───────────

In August 2020, the Los Angeles County Department of Children and Family Services (the Department) filed a dependency petition on behalf of four-year-old B.G. and his six siblings, alleging mother engaged in domestic violence with the youngest sibling's father. At the initial hearing following the children's detention, the juvenile court found Bobby G., with whom mother shared joint custody of the six older children, to be B.G.'s presumed father.

In September 2020, Joseph C. asserted he was B.G's biological father and requested that he be declared B.G.'s presumed father. However, Joseph C. did not seek to rebut Bobby G.'s presumed father status, nor did he ask the court to consider whether his presumption of paternity should displace Bobby G.'s presumption under Family Code section 7612, subdivision (b).[1] The trial court denied Joseph C.'s request, concluding it would not be detrimental to B.G. to recognize only two parents. (See § 7612, subd. (c).)

Joseph C. appeals the order denying his request to be declared B.G.'s presumed father. We conclude substantial evidence supports the court's finding under section 7612, subdivision (c), and Joseph C. forfeited his claim of error under section 7612, subdivision (b). We affirm.

─────────

[1] Statutory references are to the Family Code, unless otherwise designated.

## FACTS AND PROCEDURAL HISTORY

B.G. (born February 2016) is the second youngest of mother's seven children.

On August 12, 2020, the Department filed a dependency petition on behalf of the children, alleging mother and the father of her youngest child engaged in violent altercations.

On August 17, 2020, mother filed responses to a parentage questionnaire stating she believed Bobby G. to be B.G.'s father. Mother said she and Bobby G. were married at the time of B.G.'s conception and birth, but were not living together; and Bobby G. openly held himself out as B.G.'s father. Although a paternity test was not performed, mother claimed the family law court had previously declared Bobby G. to be B.G.'s father.

According to mother's responses, she and Bobby G. separated in 2018. Records from mother's prior dependency case showed that in November 2017, the juvenile court adjudicated her six oldest children dependents based on findings that she engaged in violent altercations with her former male companion, appellant Joseph C. In July 2018, the juvenile court terminated dependency jurisdiction and awarded Bobby G. sole legal and physical custody of the children, including B.G. In February 2019, the family law court entered a stipulated order between mother and Bobby G. for joint legal and physical custody of the children.

On August 17, 2020, the juvenile court found Bobby G. to be B.G.'s presumed father. The court released Bobby G.'s presumed children, including B.G., to mother's and Bobby G.'s custody in accordance with the existing custody order.

On September 28, 2020, Joseph C. filed a statement regarding parentage, stating he believed himself to be B.G.'s

3

father. He asserted B.G. had lived with him from the child's birth in February 2016 until 2017; he had been paying child support for B.G. since before the child was a year old; there was a 2016 child support order adjudicating him to be B.G.'s father; and he completed a DNA test at the children's court that confirmed B.G. as his biological child. He also said that he had an ongoing case in the superior court to obtain shared custody and visitation rights and that Bobby G. was agreeable to such an arrangement. Joseph C. claimed he had held B.G. out to the "whole world" as his child, but mother had denied him the opportunity to participate in the child's life.

The same day, Joseph C. made his first appearance in the case to request presumed father status. The juvenile court noted it had already made a presumed parentage finding and remarked that its "understanding" was that it could "not ordinarily find there to be [two] presumed fathers unless the court were to make a finding that it would be detrimental to the minor not to have two presumed fathers." In response, Joseph C.'s counsel reiterated that his client had been paying child support for B.G. and that Bobby G. was agreeable to Joseph C. sharing custody of the child. Mother's counsel said mother opposed Joseph C.'s request, she stood by her responses to the parentage questionnaire, and she "object[ed] to the court finding [Joseph C.] to be also a presumed father." B.G.'s counsel did not oppose Joseph C.'s request.

The court decided to "defer a parentage finding" for Joseph C., but "tentative[ly]" indicated it was "inclined to say that he would be a presumed father as well." It directed the Department to gather information regarding Joseph C.'s family law case.

4

On October 13, 2020, the Department filed a report detailing its investigation and interviews with Joseph C. and mother regarding Joseph C.'s parentage claim. Joseph C. again claimed he had completed a DNA test that confirmed he was B.G.'s biological father, but he said he could not locate the results. He said he saw B.G. often until he and mother separated two years earlier, and he had not seen B.G. for over a year. He produced a monthly billing statement for B.G.'s child support payments. The Department reported it had accessed Bobby G.'s child support records, which showed B.G. was the only child for whom Bobby G. was not ordered to pay child support.

Mother reported B.G. considers Bobby G. to be his father; Bobby G. holds B.G. out as his son; and B.G. and her other children stay with Bobby G. every week under their shared custody order. Contrary to Joseph C.'s claim, mother said he refused to take a DNA test and he never came to see B.G., even though he knew where the child lived. She said she filed for child support because Joseph C. had told his family and her family that B.G. was not his son. She also said the court ordered Joseph C. to pay child support after he refused to take a DNA test.

On October 14, 2020, Joseph C. appeared, through appointed counsel, to renew his request for a presumed father finding based on his biological connection to B.G., the child support payments, and his attempts to hold himself out as B.G.'s parent. B.G.'s counsel joined with Joseph C.'s request. She argued it would be detrimental to B.G. if Joseph C. was not found to be a presumed father, as Joseph C. had provided financial support and had attempted to have a relationship with the child. Mother objected to the request. She argued Joseph C.

5

had never been "a father figure" and his payment of child support was insufficient to grant him presumed father status.

The court denied Joseph C.'s request for presumed father status. The court explained it had already found Bobby G. to be the presumed father; Bobby G. had "assumed a parental role and meets all the criteria for a presumed father"; and, in order to also find Joseph C. a presumed father, "the court would have to find that it would be detrimental to the minor not to recognize the second father," which was "simply not the case." The court ruled Joseph C. would "remain [an] alleged" father.

The court entered an order denying Joseph C.'s request for presumed father status and finding Joseph C. to be "the biological and alleged father of the child." The court also ordered B.G. and the older children to remain placed with mother and Bobby G., with family maintenance services in place, and granted Joseph C. supervised visits with B.G.

## DISCUSSION

### 1.   *Governing Law Regarding Presumed Parenthood*

The Uniform Parentage Act of 1973 (UPA), section 7600 et seq., provides the statutory framework for judicial determinations of parentage, and governs private adoptions, paternity and custody disputes, and dependency proceedings. (*Adoption of Michael H.* (1995) 10 Cal.4th 1043, 1050; *In re Jesusa V.* (2004) 32 Cal.4th 588, 603 (*Jesusa V.*); *In re M.C.* (2011) 195 Cal.App.4th 197, 211 (*M.C.*), overturned on other ground due to legislative action.)

There are three types of fathers under the UPA: "alleged," "biological," and "presumed." (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 595–596.) "A man who may be the father of a child, but whose biological paternity has not been

6

established, or, in the alternative, has not achieved presumed father status, is an 'alleged' father." (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15 (*Zacharia D.*).) "A biological or natural father is one whose biological paternity has been established, but who has not achieved presumed father status." (*Ibid.*)

"Presumed father status ranks highest." (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801; *Zacharia D., supra,* 6 Cal.4th at pp. 448–449; *M.C., supra,* 195 Cal.App.4th at p. 212.) "[O]nly a presumed . . . father is a 'parent' entitled to receive reunification services under [Welfare and Institutions Code] section 361.5," and custody of the child under Welfare and Institutions Code section 361.2. (*Zacharia D.,* at p. 451; *Jerry P.,* at p. 801.) The need to establish a father's status in a dependency proceeding is therefore "pivotal," as it determines the extent to which he may participate in the proceedings and the rights to which he is entitled. (*M.C.,* at p. 211; *In re Christopher M.* (2003) 113 Cal.App.4th 155, 159.)

Section 7611 sets forth several rebuttable presumptions under which a person may qualify as a presumed parent, including, as pertinent here: if the person is or has been married to the child's natural mother and the child is born during (or soon after) the marriage (§ 7611, subd. (a)), or the person "receives the child into their home and openly holds out the child as their natural child" (§ 7611, subd. (d)). "The statutory purpose [of section 7611] is to distinguish between those [parents] who have entered into some familial relationship with the mother and child and those who have not." (*In re Sabrina H.* (1990) 217 Cal.App.3d 702, 708; *In re T.R.* (2005) 132 Cal.App.4th 1202, 1209.)

Section 7612, subdivision (a) provides that "in an appropriate action" certain presumptions of parenthood "may be rebutted" by clear and convincing evidence. "This provision vests the trial court with discretion to determine as a threshold matter whether the case is an appropriate one in which to entertain a challenge to an individual's status as a putative presumed parent." (*M.C., supra,* 195 Cal.App.4th at p. 222.) "If the action is an appropriate one in which to entertain a challenge to an individual's presumptive or claimed parental status, clear and convincing evidence may rebut that status." (*Ibid.*)

Before 2014, if there was no clear evidence that a candidate was unfit to retain his status as presumed father, the court was required to proceed under section 7612, subdivision (b). (See *M.C., supra,* 195 Cal.App.4th at pp. 211–212; *V.S. v. M.L.* (2013) 222 Cal.App.4th 730, 739–740; *Gabriel P. v. Suedi D.* (2006) 141 Cal.App.4th 850, 864; *Craig L. v. Sandy S.* (2004) 125 Cal.App.4th 36, 52; *In re Kiana A.* (2001) 93 Cal.App.4th 1109, 1115.) Under that subdivision, if two or more presumptions arising under section 7611 conflict with each other, "the presumption that on the facts is founded on the weightier considerations of policy and logic controls." (§ 7612, subd. (b).) This mandate to weigh the conflicting presumptions stemmed from then-controlling Supreme Court precedent, which had "rejected the concept of dual paternity or maternity where such recognition would result in three parents." (*M.C.,* at p. 214, citing *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 118 [" '[W]hat we considered and rejected in *Johnson* [*v. Calvert* (1993) 5 Cal.4th 84] was the argument that a child could have three parents:  a father and two mothers.' "]; *Jesusa V., supra,*

8

32 Cal.4th at p. 603 ["[a]though more than one individual may fulfill the statutory criteria that give rise to a presumption of [parentage], 'there can be only one presumed father' "].)

Effective January 1, 2014, the Legislature amended section 7612 to provide: "In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child. In determining detriment to the child, the court shall consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time. A finding of detriment to the child does not require a finding of unfitness of any of the parents or persons with a claim to parentage." (§ 7612, subd. (c); see also § 7601, subds. (b), (c) [definition of "parent and child relationship" "does not preclude a finding that a child has a parent and child relationship with more than two parents"].) The Legislature enacted this subdivision as part of Senate Bill No. 274, which was expressly designed "to abrogate *In re M.C.*[*, supra,*] 195 Cal.App.4th 197 insofar as it held that where there are more than two people who have a claim to parentage under the [UPA], courts are prohibited from recognizing more than two of these people as the parents of a child, regardless of the circumstances." (Stats. 2013, ch. 564, § 1(b) [legislative findings and declarations].)

## 2. *The Evidence Supports the Finding that Recognizing Only Two Parents Would Not Be Detrimental to B.G.*

Joseph C. contends the evidence was insufficient to support the court's refusal to recognize him as a third presumptive parent. As discussed, section 7612, subdivision (c) authorizes the juvenile court, "[i]n an appropriate action," to recognize that a child has more than two parents "if the court finds that recognizing only two parents would be detrimental to the child." We review a juvenile court's factual finding under section 7612, subdivision (c) for substantial evidence, drawing all reasonable inferences in support of the finding and construing the record most favorably to the juvenile court's ruling. (*In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1088 (*Donovan L.*); *In re C.B.* (2010) 190 Cal.App.4th 102, 127 (*C.B.*).)

As the court explained in *Donovan L.*, the legislative history of section 7612, subdivision (c) shows the Legislature intended the subdivision "to be narrow in scope and to apply only in 'rare cases' in which a child 'truly has more than two parents' who are parents 'in every way.' " (*Donovan L., supra,* 244 Cal.App.4th at p. 1090, quoting Sen. Bill No. 274 (2013-2014 Reg. Sess.) § 1.) "In those rare cases, the Legislature sought to protect the child from the 'devastating psychological and emotional impact' that would result from '[s]eparating [the] child from a parent.' " (*Donovan L.,* at pp. 1090–1091, quoting Sen. Bill No. 274 (2013-2014 Reg. Sess.) § 1.) Thus, the *Donovan L.* court interpreted the phrase "an appropriate action" (§ 7612, subd. (c)) to mean "one in which there is an *existing* parent-child relationship between the child and the putative third parent, such that 'recognizing only two parents would be detrimental to the child.' " (*Donovan L.,* at pp. 1090–1091; see also *In re M.Z.*

(2016) 5 Cal.App.5th 53, 65 (*M.Z.*) [adopting and applying interpretation of section 7612, subdivision (c) articulated in *Donovan L.*].)

This interpretation is consistent with the evident purposes of section 7612, subdivision (c), including to preserve "a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time." (§ 7612, subd. (c); *In re M.R.* (2017) 7 Cal.App.5th 886, 901.) It also harmonizes the subdivision with the UPA's broader statutory framework, which directs courts, in making parentage determinations, "to protect *existing* relationships rather than foster *potential* relationships." (*Donovan L., supra,* 244 Cal.App.4th at p. 1091; *In re Nicholas H.* (2002) 28 Cal.4th 56, 65 ["the extant father-child relationship is to be preserved at the cost of biological ties"]; *Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 239–240 ["There is . . . an obvious distinction between a biological father who has actually established a parent and child relationship, and a man who has not established such a relationship but would like to do so. Only the former are presumed fathers under section 7611, subdivision (d)."].) We therefore agree with the *Donovan L.* court and others that " 'an appropriate action' for application of section 7612, subdivision (c) requires a court to find an *existing*, rather than potential, relationship between a putative third parent and the child, such that 'recognizing only two parents would be detrimental to the child.' " (*Donovan L.,* at p. 1092, italics added.)

Joseph C. contends the "evidence in this case demonstrates that [he and B.G.] have an existing parent-child relationship."

To support the contention, he reiterates the allegations made in his parentage questionnaire, asserting B.G. lived with him for the child's first two years of life; he paid child support since B.G.'s infancy; and B.G. met and spent time with several paternal relatives. Even if we assume the juvenile court credited these assertions, we still are compelled to find substantial evidence supports the court's ultimate finding that Joseph C. did not have an *existing* parent-child relationship with B.G.[2]

Critically, at the time of his initial appearance in the case, Joseph C. admitted he had not seen B.G. for more than a year, and it had been about two years since he had regular contact with the child. And, although he paid child support for B.G., Joseph C. offered no evidence to show he played an emotionally supportive parental role in B.G.'s life or that four-year-old B.G. knew him or regarded him as a parent. (Cf. *In re E.O.* (2010) 182 Cal.App.4th 722, 728 ["a paternity judgment that is focused narrowly on biological and financial issues" is not determinative on "subsequent issues" concerning presumed father status].) Indeed, the only evidence on this point was mother's assertion that B.G., like the siblings with whom he shared a household, thought of Bobby G. as his only father. Thus, the evidence plainly supported the juvenile court's implicit determination that declining to recognize Joseph C. as a third parent would not

---

[2] Of course, in weighing the evidence, the juvenile court was entitled to credit mother's contrary assertions that Joseph C. never came to see B.G. and that he had told his family and her family that B.G. was not his son. (*C.B., supra,* 190 Cal.App.4th at p. 127 [it is the exclusive province of the juvenile court to " 'evaluate the credibility of witnesses' " and to " 'resolve evidentiary conflicts' "].)

result in "the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and . . . psychological needs for care and affection . . . for a substantial period of time." (§ 7612, subd. (c).) And, the evidence supported the court's finding that Joseph C. did not have an *existing* parent-child relationship with B.G. "such that 'recognizing only two parents would be detrimental to the child.' " (*Donovan L., supra,* 244 Cal.App.4th at p. 1092.)

The juvenile court did not err in declining to recognize Joseph C. as a third parent under section 7612, subdivision (c).[3]

3. ***Joseph C. Forfeited the Claim that His Presumption of Paternity Outweighed Bobby G.'s Presumptions***

Joseph C. maintains reversal and remand of the presumed parentage ruling is required because the juvenile court did not make a determination under section 7612, subdivision (b) as to whether his presumption of parentage rested on "weightier considerations of policy and logic" than Bobby G.'s. However, in the proceedings below, Joseph C. neither sought to rebut Bobby G.'s presumption of paternity, nor did he object that

---

[3] Because the evidence supports the juvenile court's finding that Joseph C. did not have an existing parent-child relationship with B.G., any supposed error in the court's failure to make an explicit finding as to whether Joseph C. qualified as a presumed parent was harmless. (See *M.Z.*, *supra*, 5 Cal.App.5th at p. 66 [holding juvenile court should have first determined whether appellant qualified as a presumed father under section 7611 before determining whether he should be deemed a third parent under section 7612, subdivision (c); but error was "harmless" as "juvenile court found section 7612, subdivision (c) inapplicable precisely because it determined there was no existing parent-child relationship"].)

13

the requisite weighing process had not been conducted when the court announced its parentage ruling.  Thus, Joseph C. forfeited the issue as a ground for reversal.

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.  [Citation.]  The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected."  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 (*S.B.*).)  The rule also discourages gamesmanship by parties who might otherwise "deliberately stand by in silence and thereby permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable."  (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339 (*Lorenzo C.*); see also *In re Seaton* (2004) 34 Cal.4th 193, 198.)

Dependency matters, in particular, demand firm adherence to the forfeiture rule because "these proceedings involve the well-being of children, [and] considerations such as permanency and stability are of paramount importance."  (*S.B., supra,* 32 Cal.4th at p. 1293.)  Thus, most nonjurisdictional rulings in dependency proceedings must be challenged by objection (or other appropriate motion) in the juvenile court; otherwise, the purported error is forfeited and may not be raised for the first time on appeal.  (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2020) ¶ 8:270.3; see *In re J.W.* (2020) 53 Cal.App.5th 347, 352 [mandatory provisions of the Uniform Child Custody Jurisdiction and Enforcement Act do not implicate fundamental jurisdiction and are subject to forfeiture by failure to assert them in the juvenile court]; see also *In re Wilford J.* (2005) 131 Cal.App.4th 742, 754 [failure to object

14

to defect in notice of jurisdiction hearing]; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502 [failure to request assessment of prospective guardian under Welf. & Inst. Code, § 366.22, subd. (b)]; *Lorenzo C.*, *supra*, 54 Cal.App.4th at pp. 1338–1339 [failure to request court to order bonding study]; *In re Kevin S.* (1996) 41 Cal.App.4th 882, 885–886 [failure to challenge setting of Welf. & Inst. Code, § 366.26 permanency planning hearing when court determined that no reasonable reunification efforts were made]; *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 [failure to object to adequacy of adoption assessment]; *In re Anthony P.* (1995) 39 Cal.App.4th 635, 640–642 [failure to request sibling visitation as part of a permanent plan]; *In re Daniel D.* (1994) 24 Cal.App.4th 1823, 1830–1831 [failure to request alternative placement]; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411–412 [failure to object to adequacy of adoption assessment]; *In re Jennilee T.* (1992) 3 Cal.App.4th 212, 222–223 [failure to object to qualifications of court-appointed psychologists regarding Welf. & Inst. Code, § 361.5, subd. (b)(2) assessment]; *In re Daniel C.H.* (1990) 220 Cal.App.3d 814, 836 [failure to object to juvenile court's amendment of pleading to conform to proof].)

While "application of the forfeiture rule is not automatic," our Supreme Court has instructed that "the appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*S.B., supra,* 32 Cal.4th at p. 1293.) This, again, is especially so in dependency proceedings. Because these matters implicate the well-being of children and considerations such as permanency and stability, discretion to excuse forfeiture "must be exercised with special care." (*Ibid.*)

Joseph C. had multiple opportunities in the proceedings below to object and to request a determination under section 7612, subdivision (b) regarding the relative weight of the competing parentage presumptions. When Joseph C. made his first appearance, the juvenile court indicated it was "inclined to say that he would be a presumed father." However, having already declared Bobby G. the presumed father, the court announced Joseph C.'s request could be granted only upon "a finding that it would be detrimental to [B.G.] not to have two presumed fathers." Joseph C. did not object or assert that, regardless of detriment, he should be recognized as the presumed father under section 7612, subdivision (b) if his parentage presumption rested on "the weightier considerations of policy and logic."

Likewise, despite the court's stated focus on detriment, Joseph C. did not raise the section 7612, subdivision (b) issue when he renewed his request for presumed parent status at the subsequent hearing. Nor did he object when the court denied his request and ruled he would remain the alleged father because no detriment had been shown. At each critical juncture, Joseph C. had the opportunity, but failed to challenge the court's exclusive focus on detriment or to object that his presumption of paternity rested on "weightier considerations of policy and logic" than Bobby G.'s. (§ 7612, subd. (b).)

We also cannot ignore, as mother emphasizes, that Bobby G. met the requirements for *two* presumptions of paternity under section 7611—he was married to mother when B.G. was born (§ 7611, subd. (a)) and he received B.G. into his home and openly held out B.G. as his natural child (§ 7611, subd. (d))—while Joseph C., according to his own allegations, satisfied only

16

the presumption set forth in subdivision (d).  More importantly, Bobby G. was a custodial parent to B.G. and his older siblings under a custody order that stemmed from a dependency case implicating Joseph C. in violent altercations with mother. Meanwhile, Joseph C. had no contact with B.G. for over a year and had not had regular contact with the four-year-old for about two years.  On this record, there is good reason to believe the juvenile court would have determined Bobby G.'s presumptions of paternity rested on the weightier considerations of policy and logic.  By remaining silent, Joseph C. allowed the juvenile court to forgo making the requisite factual finding, which otherwise might have resulted in an adverse ruling against him under section 7612, subdivision (b).

Joseph C.'s reliance on *In re L.L.* (2017) 13 Cal.App.5th 1302 is misplaced.  The opinion does not address forfeiture, which apparently was not an issue in the appeal.  In *L.L.*, the reviewing court concluded substantial evidence supported the juvenile court's finding that the child's biological father qualified as a presumed father under section 7611, subdivision (d), but held the juvenile court erred when it interpreted section 7612, subdivision (c) to allow designation of a third parent upon a finding that "it would not be detrimental to [the child] if [the biological father] *was added* as a third parent." (*L.L.,* at pp. 1313–1316, italics added.)  And, because there was no evidence to support a finding that the biological father had an "*existing* relationship" with the child, the *L.L.* court concluded he could not be recognized as a third parent under section 7612, subdivision (c). (*L.L.,* at pp. 1316–1317, citing *Donovan L., supra,* 244 Cal.App.4th at pp. 1092–1094.)  Under these circumstances, because the biological father qualified as a presumed father

17

but could not be a third parent, the *L.L.* court determined it was necessary to remand for the juvenile court to resolve the conflicting presumed parentage findings under section 7612, subdivision (b). (*L.L.,* at pp. 1317–1318.) Here, in contrast, the juvenile court ruled that Joseph C. was to remain an alleged father, and Joseph C. failed to object to the ruling or to request a finding under section 7612, subdivision (b). Because Joseph C. is an alleged father under the court's order, remand is not necessary to resolve conflicting presumed parentage findings. *L.L.* is inapposite.

Finally, this case does not present an important unresolved legal issue that warrants discretionary relief from the forfeiture rule. Section 7612, subdivision (b) unambiguously requires the juvenile court, when faced with "two or more presumptions . . . under Section 7611 that conflict with each other," to recognize the presumed parent whose presumption "is founded on the weightier considerations of policy and logic." When the juvenile court disclosed its misunderstanding that Joseph C. could be recognized as a presumed father only upon a finding of detriment, the onus fell upon Joseph C. and his counsel to object and to request a finding under the clear mandate in section 7612, subdivision (b). Joseph C.'s appeal does not present an important legal issue. He simply forfeited a clear ground for objection. (Cf. *S.B., supra,* 32 Cal.4th at pp. 1293–1294 [appellate court did not abuse its discretion by entertaining mother's challenge to visitation order notwithstanding her failure to object in the juvenile court; the appeal presented an important issue of law that had divided Courts of Appeal regarding delegation of visitation decisions to a legal guardian].)

## DISPOSITION

The order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EGERTON, J.

We concur:

EDMON, P. J.

LAVIN, J.